Good morning. Good morning, Your Honors. Could you give us your name for the record, please? May it please the Court, my name is Michael Salman, an appellant to this case, and present also is Suzanne Salman, also an appellant and plaintiff to the case. I would like to use, with the permission of the Court, approximately eight to nine minutes for myself. Suzanne Salman has requested only two to three minutes and whatever time we have left for rebuttal. Perfect. Thank you. Thank you, Your Honor. We first come to this appellate court because we believe that the federal court erred when they dismissed this case under Rooker-Feldman and Res Judicata. The issue with the plaintiff began in 2007, during which time the defendants had sent letters to the applicants or appellants from 2007 and 2008 to cease and desist Bible studies in their residence. To the defendant, Bible studies constitute a church use, and since the residence was not a church and did not meet commercial codes, it was not permitted in their residence. The plaintiffs informally argued this case with the defendants for approximately two to three years, trying to find resolution. It was not until 2010 formal charges were filed against the plaintiff, Michael Salman, for building code violations. Prior to the trial, a motion to dismiss was filed with the city court, stating that the application of the code against the plaintiffs was unconstitutional, and specifically stating ARS 41-1493.01, also rule upon the Religious Land Use Institutionalized Person Act, the First Amendment, and against the Constitution. This is all found in the exhibits admitted under book one for the trial court. The municipal court judge, Sally Gaines, replied, and I quote, you have some excellent issues for appeal for the constitutionality of the actual city code, but we're not dealing with that right now. Throughout the trial, the city court continued to push off our challenge to their application of the code, refusing to even consider it. It is obvious that the court did not want to deal with this. So when we filed our appeal with the state court under Judge McLennan, the state court came back stating, in their opinion, an error saying, defendant did not raise any defense basis under ARS 41-1493.01 prior to trial, thus this court may review for fundamental error only. So it is obvious here that the state court also refused and erred to consider it a challenge to the constitutionality of the code. Well, that's my question. They may have made a mistake. I wouldn't rule that out. But we don't have the authority to sit to correct their mistakes. If the superior court makes a mistake, the next step in the process is the Arizona Court of Appeals. And then if they mess it up, the next step is the Arizona Supreme Court. And if they're wrong, then it's the U.S. Supreme Court. We don't have the right to come in and deal with that. If that was the issue or the ability, that would be something we would take, and that is something we did take. We appealed to the appellate's Arizona Court of Appeals. The Arizona Court of Appeals replied to us stating that the highest jurisdiction from the city court is the state court. So we cannot go beyond the state court. I mean, if you lost, I guess the Arizona Court of Appeals threw you out for whatever reason, right or wrong, I don't know. But if you're not happy with what they do, then you go to the Arizona Supreme Court. I understand, Your Honor. And then the U.S. Supreme Court. Sure. And I think that is something that we need to understand is this is not, we are not trying to relitigate the criminal case. What we're trying to do is take the foundation of the application of the constitutional code, the application of this code, and challenge that in itself. If you're right about your constitutional arguments, wouldn't that imply that your conviction was invalid? That can be dealt at a different matter. Obviously, we have to challenge the code, the foundation of the code first, and then we can come back and state, well, the other court ruled that this code applied to private religious gatherings is unconstitutional. Yes, but my point is, if we were to say, you know, Mr. Zalman's got a valid point all along, wouldn't that imply that your city court conviction was invalid? It would have to be refiled as that, as new evidence. And the problem there is Judge Martone said that we have a case, the Supreme Court has a case called Heck, H-E-C-K, that says if a civil case would imply the invalidity of a criminal conviction, you can't do that. You've got to go back to the criminal case and get the criminal case fixed. That's why Judge Martone threw the case out. Well, Heck, Judge Martone threw the case out because of Younger, specifically during Younger. Even though he did mention Heck, which we do not argue with Heck, because Heck says that we cannot ask for damages under the civil rights USC, I can't remember, 1983, unless we first get an overturn, and then we can ask for damages. So we're not arguing Heck. What we're arguing is the fact that we are challenging the application of this code. Your Honors, this application of this code is pending even today. The appellants cannot have Bible studies in their living room outside of the criminal case presently. The appellants cannot have Bible studies in their living room unless they conform their property to meet commercial codes. So if we were to have a Bible study in our living room today and we were to get violated, we'd be back to square number one into the City of Phoenix Municipal Court challenging the code again. Counsel, do you have any thoughts on whether our case of Maldonado v. Harris has any applicability to this matter? As of, I did not see that case when studying it, Your Honor, to be honest with you. But if it has anything to do with Rooker and Feldman as a pretense, as a foundation, it doesn't apply. Because, again, Rooker-Feldman's... Actually, the case is very helpful to you. That's why I'm asking you if you have any thoughts about it. I have not. And I wish... Can you tell me the case one more time, Your Honor? Yeah. It's Maldonado v. Harris, 370 Fed Third, 945 at 950. And that's a Ninth Circuit case from 2004. Wonderful. Thank you, Your Honor. The issue here is there has to be an ability for plaintiffs when they are... Even defendants in a criminal case, to be able to challenge certain issues when they're presented with the threat of jail or they're presented with the threat of fines, et cetera. Counsel, with respect, I do respect your argument, but in this particular case, what you're dealing with, at least with this Court, is a procedural matter. And the real question here, at least for me, is whether the underlying verdict was one of what are called forbidden de facto appeals that's been carved out of Rooker-Feldman. Do you have any comment on that? I can't remember. Are you trained in the law? You're very good at what you're doing, but I'm just asking you, do you know about these things or not? Do you know what I'm talking about with these de facto appeals, the forbidden de facto appeals? Yes. Yes, Your Honor. And I think, if I may, Your Honor, I think this has been the issue that has been ever presented before the Federal Court and any courts even to this day, is our presentation of the criminal case is not to ask the Court to relitigate the criminal case or to make it a de facto appeal. With respect, I understand that's what you're saying, but in our parlance, you need to fit it within the acceptance to Rooker-Feldman, and I'm asking you to help us with that. Rooker-Feldman, the Court has narrowed its application and forbids two different types of de facto appeals. I wonder if you have any comment on why your case does not fit into those two categories. I do not have any comment other than what I do know is that in order for something to be appealed, it must be litigated in the first place. That makes sense. And the issue is the Constitution of the city code was never litigated. It was refused to be litigated in the city court by the judge. But you tried to litigate it, and the judge made a mistake, perhaps, in not buying your point. Well, I wish that was the case. But the case specifically, and I quote, what she stated was that she was not going to deal with that right now. Why would you ask her to? Absolutely. And so that's the mistake that she made, and that's the mistake that should have been appealed, and if you're right, you would have won. Exactly, Your Honor, and we did appeal it. We appealed it to the state court, and the state court came back and said we didn't even raise the issue. Well, again, if they're wrong, I've been through this before, but then you go up the chain. We're not part of the chain. The next chain is the appellate court, and the appellate court has no jurisdiction in the case. Again, Your Honor, under the Arizona rules, the highest a person can appeal from the city court is a state court. Right. You cannot appeal to the Arizona Court of Appeals. And then the Supreme Court. That may have been an option, but in this case, we decided to take it to federal court. That's the problem. Well, Your Honor, we took it to federal court right after this trial court. We took it to federal court under Judge Martone, and we requested Judge Martone to look at the code, and we challenged the code. Judge Martone said, well, it's still in the court of appeals, so we can't look at it because it's pending state proceedings at this time. You must exhaust state proceedings prior to coming to federal court, which when the court of appeals returned a reply stating that they cannot hear it because they have no jurisdiction, we then went and refiled the federal case, and that's when Judge Teelberg listened to it. And then he said, well, it was already litigated. It wasn't already litigated. The state court, the state superior court made an error and said that we did not even bring up the defense. It was as, and excuse my outlook on this, as if the judge did not even read the pretrial motion. He should have considered it. They have an obligation, judges have an obligation to listen to the challenge of the foundation of the code that's being applied to a criminal case, and when there's challenges to it, you cannot just ignore them and say, I'm not going to listen to that. I'm not going to hear that right now. And so I think it's important for Ms. Salmon to be able to come forward and say, I'm not going to listen to that. I'm not going to hear that right now. Or to state in her transcripts, to state something like, I cannot change the law. The city council has decided these are the codes, and I can only uphold the codes. I notice you said at the beginning you wanted to give Ms. Salmon an opportunity, too. Would this be a good time to pass the baton? Yes, Your Honor. Okay, thank you. Good morning. Good morning, Your Honors. May it please the Court, my name is Suzanne Salmon, and I am also a plaintiff in this case. I would just briefly like to add to what's already been said, that this is an issue that has continued to have effect on me and my family. This is an issue that must be addressed so that citizens have a right to gather in their homes privately without fear of prosecution. We are continually informed by the defendant that the only resolution to this matter is to convert my home into a church. There are house churches and home Bible studies all over this nation. People should have the right to gather, and the federal court should have considered my present rights and interests in this case. Even though I am married to Michael Salmon, I am not immune from also being prosecuted in the future for holding home Bible studies. And I will add that the city of Phoenix did also warn me of that. They told me, they said, if you continue on in this manner, we have the right to prosecute you as well for having a Bible study in our home. You know, restricting religious gathering is unconstitutional, and I would ask that this court remand this case back to the federal court so that it can be heard, so that we can litigate these issues. I would like to, I would like this court to understand that even though there have been no charges brought against me personally at this time, I know that if I choose to exercise my faith at home, charges are inevitable. This has had a chilling effect on me and anyone who has a house church or chooses to, excuse me, exercise their religious freedom from their home. So this case is not just about what happened, it's about what continues to happen. It's about what has happened in the past and the threats that we've had and the threats we continue to have if we want to have a Bible study in our home. Thank you. Thank you. Your Honors, may it please the Court, my name is Brad Holm, I represent the Appalachee City of Phoenix. Thank you for the opportunity to present our position today. The issue in this case is whether the Court should grant the Solomons another opportunity to argue that the Phoenix Building Codes, on their face, violate the Solomons' religious liberties. Let me suggest to you that the question should be, we're talking about, go ahead, Judge Wallace. Let me see, I haven't asked one yet. It's definitely Judge Wallace's turn. Thank you, seniority does help. I think the question, to my mind, is a little more defined, and that is whether the District Court committed error in applying Rook or Fellman. And so if you could focus on that issue, I'd be helpful. I'm somewhat concerned that a case that appears to me to be right on point, a Ninth Circuit case, manufactured home communities versus City of San Jose, a two-hour case, a 2005 case, was not cited by either side. In that case, Judge Fletcher, Betty Fletcher, now deceased, focused on the issue, and it was as the issue is here, that it involved a city. And the holding is very negative for the appellee in this case. Are you familiar with that case? And the trial court applied Rook or Fellman in the Ninth Circuit as well as across the other circuits, and just a handful of the Supreme Court levels, you know. Yes, I understand that, but this one appears to be right on point, where a city is involved, and the trial court applied Rook or Fellman and we reversed. Well, Your Honor, may I address my Rook or Fellman argument then? Please. I apologize that I'm not familiar with that case. Here's the Rook or Fellman argument. The trial court really dismissed, the district court dismissed, on two grounds, two significant grounds. I'll skip to the Rook or Fellman one first, but I'd like to come back if I get a chance to, to talk about the federal preclusion ground, because that really went to Judge Teelborg's sense that he did not have appellate jurisdiction over Martone's order. And what the Solomons did in the Teelborg matter is they asked Martone, they asked Teelborg to reverse a central core claim and a set of issues and a set of remedies that were asked for in the Martone matter that Martone refused to grant. Going to Rook or Fellman. With respect to the Rook or Fellman issue, Your Honor, number one, this is not an ExxonMobil case. They argue in their briefs that it is because they argue that in ExxonMobil there was, under the second Judge Fletcher, the Sons case, the Noel case, that there was an independent claim. This is not an independent claim case for this reason. The independent claim analysis that they have in their briefs, I apologize, the independent claim analysis that they have in their briefs is based on the notion that they were only seeking prospective injunctive relief against the enforcement of the building code ordinance. To do that, they have to make some kind of on-its-face unconstitutionality argument. And they tried to do that in the district court in front of Teelborg, but as the record from that case clearly shows, Teelborg couldn't figure out what they were arguing on its face in this building code adopted by numerous jurisdictions around the country, what that argument was. They couldn't articulate it, and they have abandoned that on appeal. There's no argument on appeal. Kennedy. I'm sure I understand your point. You're saying that in the four winter factors, they couldn't show the first to try to get the injunctive relief. Is that right? That's right. That's what Teelborg ruled. All right. So with respect, though, back to Rooker-Feldman, Rooker-Feldman has in it this independent claim argument that they make. That's the only one of all the exceptions to Rooker-Feldman that they articulate at all. They say that they've got an independent claim that albeit challenges a legal conclusion of a state court adjudication. They never articulate what that claim is. They don't say what the claim is. They don't say what the authority is for that claim. Instead, they sort of leave it to you to read between the lines. But the reading between the lines suggests that they believe they have an on-its-face constitutional challenge to the building code. Is it your position that Rooker-Feldman bars what would amount to a de facto appeal of Mr. Solomon's criminal conviction? Yes. How does that affect Mrs. Solomon? Well, good point, Your Honor. Let's go back to point number one on the basis on which the case was originally dismissed. Judge Teelborg dismissed it. He dismissed it on the ground that there were, that the issue of the prospective enforcement of the building code against the Solomons was before Judge Martone. And before Judge Martone, the argument was that that was a prospective claim, and therefore, it was an independent claim under Younger. And therefore, he shouldn't dismiss it under Younger. They argued that, and in Martone's opinion, reported on Westlaw, it's very clear that he understands that they're arguing that they have a prospective claim that's not barred by Younger. He goes ahead and dismisses that so-called independent claim, applying Younger. If that was a mistake, then the proper remedy for that mistake was direct appeal, not collateral attack, as you know. So my argument is that the independent claim that they argued in front of Judge Martone is the same kind of independent claim they're arguing as the exception to Rooker-Feldman in this case. And because they argued and lost that claim in front of Martone, and because their argument was it wasn't a proper claim for abstention under Younger, they should have come to this Court at that time. And that's essentially what Teelborg held. Let me ask you on that particular question whether there was a final determination by Judge Martone. If you look at the order granting, he says all claims are dismissed without prejudice. All claims are dismissed without prejudice. Now, it's just Hornbook law that there's an action and there's a complaint. And if you dismiss the complaint without prejudice, what you're saying is you can refile another complaint. The action by Judge Martone wasn't. Now, admittedly, sometimes the clerk's office gets it a little fouled up. And I'm not being critical. It's just that they aren't schooled in the difference between the action and the complaint. And strikingly, when we get to Judge Teelborg's, he says the case, the case, whatever the case means, is dismissed without prejudice. And then it says the clerk shall enter judgment accordingly. Now, I don't know that we have jurisdiction based upon that statement. But at least in the process of looking at what Judge Martone did, it seems to me that he did not suggest that there would be a finalization. That is, that the action would be dismissed, but only that it couldn't refile. Can you help me with that? It's sort of difficult for me to understand your argument based upon the record. No, no, it's a fair question to ask, Your Honor. Let me address that directly. So Judge Teelborg cited a case called Offshore Sportswear, which introduced, didn't introduce for the first time, but discussed the doctrine of collaterally final orders. In our brief, we emphasize collaterally final orders without citing HALOC, which is the United States Supreme Court decision. Clearly, the development of the law at the time that Offshore Sportswear was decided suggested that collaterally final orders might have more breadth than the Supreme Court subsequently decided in HALOC. So when you look at the question that you've raised, Judge Wallace, the answer to that is in a case of this circuit called California Department of Water Resources v. Power X Corp. And there, citing the Idlewild Bon Voyage Liquor Corp. case, this court held in no uncertain terms that when a district court order places the parties effectively out of court, it is final and appealable. That's what Martone's order did. It placed the parties out of court. How is that when he says dismissed without prejudice? Isn't he saying you can file another complaint in this section? That's right, he is. But the question is, did he, quote, effectively, did he place those parties, quote, effectively out of court? Close quote. If he did, then the order is final and appealable. The Supreme Court revisited that issue in a case called Quackenbush. And in Quackenbush, the court specifically held that in an abstention case that results in a remand-to-state court, so it was a court, a case that was removed to federal court, but then the federal court, the district court, decided under Colorado River abstention that it should be, that the court should abstain and the matter should be remand-to-state court. The United States Supreme Court said in that case that the order essentially abstaining was appealable. So here I don't think there's any question under those two decisions that Judge Martone's order was appealable. So then the question is, can they take that claim that they asserted in Martone's court and instead of appealing it to the Ninth District, could they appeal to the same level of judicial district, could they come to Judge Teelborg and ask him to reverse it? And that's point one in his decision, that he did, he analyzed it in terms of federal preclusion law, but what he was really saying, I think, is that he did not have appellate jurisdiction, horizontal appellate jurisdiction. Did he say that? He did not say that, Your Honor. And I can say the other interpretation of that is, is that he improperly failed to take into account that what had been done by Martone was to dismiss without prejudice, which, as my colleague had indicated, would allow these folks to refile and, in this case, in Teelborg's court. I get your point about there's another way to look at it, but it is the idea that they could file the claim in another court because the dismissal was without prejudice is certainly not laughable, is it? It's not laughable, but here's the gut argument. The gut check for this panel, in my opinion, is this. In offshore sportswear, you'll remember that the issue was a forum selection clause. It was litigated as a separate issue to determine jurisdiction and decided. So hence, the first case was dismissed without prejudice. What ends up happening through a bunch of convolution is that the plaintiff disappointed there, files in state court, it gets removed, and then it comes eventually to this court again because the district court dismisses it again, even though it had not been dismissed with prejudice the first time around. And when it gets here, this court says the telling language from the cases is that what the plaintiff in that case did is they came back into federal court a second time on the proposition that the first federal determination was meaningless. And that's what the Solomons did here. They came back into Teelborg's court based on that proposition that Martone's decision was meaningless. But in Martone's court, he recognized he was being asked to declare that the building code on its face was unconstitutional, and that was a separate independent issue from the attempt to undo the convictions in incarceration, which was younger abstention, the younger abstention issue. In fact, he says in his opinion, the opinion on Westlaw, that because they realized they were going to lose on younger abstention before Martone, they couldn't challenge their convictions there. He said, quote, they are not requesting, they say, that their convictions for ordinance violations be overturned, but instead want to establish the existence of their constitutional rights and determine whether the ordinances and building codes as they say was not subject to younger abstention. And so the dismissal of it, therefore, by their argument was error. That dismissal should have been appealed to this court. Instead, they bring the same claim over in front of Teelborg and say, do now what Martone didn't do. And if you do that, then you turn federal jurisprudence and management of the courts on its head. And you allow litigants to litigate over and over again. I apologize, Judge Wallace. How does that end in getting us jurisdiction on the Teelborg case? This is a little confusing. As I indicated, Judge Teelborg said it's dismissed, the case is dismissed without prejudice. Ordinarily, that would end it until they filed another complaint. But in the judgment that's entered by the clerk's office, they say the complaint and action are dismissed without prejudice. Of course, if the action is dismissed, it's with prejudice. Now, we have a record here that I'm not sure we have jurisdiction. Is there some way we can decide this case? That is, is what Judge Teelborg did and what the clerk's office did sufficient to make it final so that we can have jurisdiction? I go back to the Idlewild case, the California Department of Water Resources case, and Quackenbush. Long story short is these plaintiffs were thrown out of federal court by their estimation. On that basis, they're entitled to — I'm sorry, my time's up, Your Honor. Finish your thought. On that basis, they're entitled to come to this court to determine whether the decision on jurisdiction by the district court was valid. So a district court always has jurisdiction to determine its jurisdiction. It determined it wrong, these plaintiffs claim, and so now they're here. My view is you have jurisdiction and you should affirm, and I would ask the court to do that. Before you leave on my time, so you believe that the decision by Teelborg is a final decision? It is a final decision with respect to jurisdiction. Without our jurisdiction? Your jurisdiction. Okay. Let me ask you just one other question. May I answer, Judge Smith? Let Judge Wallace finish up. Oh, I'm sorry. Let me ask you one other question having to do with the Rooker-Fellman. I alerted your opposition of this case by Judge B. Fletcher, a manufacturing home, and neither side cited it, so I'm not sure you're familiar with that case. I'm not, Your Honor. Let me just read one part of it so you can see the problem that I need an answer to and why I'd like — I'm happy to have you here, because I haven't made up my mind. But it says here, MCH sues the city of San Jose, an adverse party, not a state court. MHC is challenging the city's interpretation of the ordinance. MHC's complaint does not directly challenge a state court's factual or legal conclusion. MHC's complaint to the district court is therefore not forbidden, a forbidden appeal under Rooker-Fellman. It's fairly close to the case we have here, and I know this puts you at a disadvantage not having read the case. And I want to go back and read it again myself after the argument, but I want it in fairness, because it's an issue we have to deal with, to give you an opportunity to comment. Sure. Thank you, Your Honor, for that opportunity. There are, as I've noticed in my preparation for today, there are two kinds of Rooker-Fellman cases. They are the kind that seem to grow wild in California, where California litigants will often name the actual judges. They will name the judges that tried the case, they will name the appellate panel that heard the case, and they'll say they're entitled to have those nasty judges' orders set aside. That is, as Judge Silverman wrote in a case called Marciano, that's somewhat unusual to actually come to the district court and name the judges. Whose decisions you want set aside on federal constitutional grounds, and it's somewhat unusual to come into federal court and say, this is the decision, and I want this decision set aside. That's why we have the forbidden de facto appeal doctrine. That's point number two. Most of the cases on Rooker-Fellman come to the appellate courts in the federal system on the basis that it's the same two, I'm sorry, the same two parties litigating, but as those two parties are litigating, it becomes self-evident that they're litigating the very same issues that were at stake in a state court judgment. And on that basis, that is what Judge Fletcher, the second Judge Fletcher, the son, called in Noel v. Hall a forbidden de facto appeal. And the forbidden de facto appeal essentially asks this question. It's a relief that the plaintiffs are asking in this case, effectively ask the court to go behind and to set aside issues that were decided in the state court judgment. That's what is at issue here in our view. And in that sense, the San Diego case, or the San Jose case, does not challenge that basic proposition. Thank you. Mr. Salmon, back to you. You have a couple of minutes left for rebuttal. Thank you, Your Honors. According to the appellee, their interpretation, Your Honors, is the fact that the Salmons were asking Teelberg to reverse Judge Martone's decision. Judge Martone ruled that we were not ripe to bring the case to federal court. And the way we interpreted his decision was based on the fact that we had not exhausted state appellate rights. That there have been, in what he believed, that there were still relief pending in the state courts, that there were some relief. And we believed the same thing, that there was some form of relief that we could receive in the state court. But when the state courts refused to listen to the challenge of the constitutionality of the code, or the application of the code, we found there was no relief, that the case was never litigated, or the issue on the application of the code to private release gatherings was never litigated in any court. The appellee states, or the plaintiff or defendant states that we're having another, that we're trying to bring this before Teelberg as another opportunity. We never had an opportunity in any court, in city court, in state court, even under Judge Martone's court, to present the challenge to the constitutionality of the code, or the application of this code. So no court has allowed us to speak. When we believed all exhaustive rights were, or all state rights were exhausted at the state level, or appellate rights were exhausted and no one was able to hear it, we then brought it before Judge Teelberg. Judge Teelberg stated that we had already litigated it, and we never had. So Rooker-Feldman also has another part, if I may say, inextricably intertwined. That's another part of Rooker-Feldman. The issue that we're having here has not, even if we were to take out the criminal case, to this day, right now, that challenge, or that issue, is still pending today, and it must be answered. Thank you, Your Honor.
judges: Wallace, Silverman, Smith